## Miller's Estate.

*Executors and administrators—Mismanagement—Removal—Examiner to take testimony—Petition—Answer—Discretion of court.*

1. The orphans' court commits no error in refusing to appoint an examiner to take testimony in a proceeding for the removal of an executor for mismanagement of the estate, where the executor's answer admits the material averments in the petition for his removal. In such a case there is no necessity for taking testimony.

2. It cannot be said that the court abuses its discretion in removing an executor for mismanagement of the estate where he admits that he had failed to pay the debts of the decedent and the taxes levied against the estate, and that he had misappropriated a portion of the rentals, made assets for payment of debts, and fails to make any satisfactory explanation of his actions.

Argued March 10, 1919. Appeal, No. 304, Jan. T., 1919, by Frank E. Miller, from decree of O. C. Franklin Co., removing the appellant from his office of Executor in re'petition of Carrie C. Brown, J. R. Miller and Iola Miller in the estate of Annie E. Miller, deceased. Before BROWN, C. J., STEWART, FRAZER, WALLING and SIMPSON, JJ. Affirmed.

Petition by legatees and devisees for the **removal of** the executor under the will of the decedent.

The facts appear in the opinion of the lower court, by GILLAN, P. J., filed February 3, 1919, which was as follows:

The petition of Carrie C. Brown, J. R. Miller and Iola Miller was presented to us on the 7th day of November, 1918, setting forth that they were legatees and devisees under the will of the said Annie E. Miller. The petition was accompanied by a copy of her will. Of this will Frank E. Miller was appointed the executor. The will was duly probated and letters testamentary granted to the executor named therein. The prayer of the petition was as follows:

"That a citation be issued to Frank E. Miller, executor of Annie E. Miller, deceased, requiring him to appear on a day certain to answer the allegations of the foregoing petition and to show cause, if any there be, why letters testamentary issued to him by the Register of Wills of Franklin County should not be vacated and the said Frank E. Miller removed from the trust, as provided by Section 53-a of the Fiduciaries Act."

Upon the petition being presented a citation was awarded, returnable in twenty days after service. On the

14th day of November, 1918, the executor accepted service of said citation. On the 4th day of December, 1918, the executor asked and obtained an extension of time to the 15th of December for filing of the answer. On the 14th of December an answer was filed. On the 28th of January, 1919, counsel for executor presented a petition asking for the appointment of an examiner to take the testimony. Inasmuch as the answer admits all the material allegations of fact contained in the petition, there can be no good purpose served by the appointment of an examiner. We are, therefore, called upon to determine the question on petition and answer.

The decedent died on the 13th day of October, 1917. The estate consisted of real estate appraised at $50,000, for the purpose of determining direct inheritance tax; personal property at $1,200. By her will the testatrix directed that her debts and funeral expenses be first paid. She made this provision for her daughter, Carrie C. Brown:

"I give and bequeath to my daughter, Carrie C. Brown, my piano, and what she desires to take of the household goods and furniture in the residence where I live."

She directed that her executor manage the estate, collect the rents, etc. She expresses a desire that the real estate be not sold until the time arrives when the executor deems it expedient that it be sold. When said real estate is sold, the proceeds to be divided among the legatees named in the will, share and share alike. These petitioners are legatees and devisees named in the will.

The testatrix having died after the passage of the Fiduciaries Act of 7th June, 1917, the rents of the real estate are assets for the payment of debts, the personal property not being sufficient for that purpose. All debts owing by a decedent are to be paid by the executor in the following manner: (1), funeral expenses; medicine and medical attendance during last illness; servants' wages not exceeding one year; (2), rents not exceeding one

year; (3), all other debts without regard to the quality of the same, except debts due the Commonwealth.

The decedent was indebted on a mortgage to J. H. Stoner, trustee, in the sum of $11,000, with interest from April 1, 1916. On this mortgage a sci. fa. has been issued since the death of testatrix and judgment taken against the executor and legatees for $12,576.63, and costs. The decedent was also indebted on a mortgage in the sum of $1,000; also on another mortgage in the sum of $2,-000, on which foreclosure proceedings are threatened. The executor has paid no interest on any of these obligations.

The executor has received rents to the amount of $2,-670. The undertaker's bill is $201; cemetery bill, $12.50; tax accrued since the death of decedent, $430.50. None of these have been paid and on taxes are penalties for delay of payment. If paid promptly from most of these taxes would have been an abatement of 5 per cent. He has neglected to pay the direct inheritance tax on the estate and that is bearing interest at the rate of 12 per cent per annum.

He has paid out to his father over $315. No authority whatever is shown for these payments. His statement is that the most of it is for board. The father, Joseph W. Miller, was the husband of Annie E. Miller. He gets nothing under the will. It does not appear that he elected to take against the will. Why the executor should pay out this money, for which there is no warrant, and allow the direct inheritance tax to remain unpaid while bearing interest at the rate of 1 per cent per month, and allow penalties to accumulate on the taxes, is nowhere explained. Certainly this is not to the best interests of the estate. He paid out large sums of money for items which he designates as "trips and supper." There is no explanation as to what these items mean. If in the fourteen months' time a property which has rented as this property has the manager cannot save from repairs and upkeep enough to pay the funeral expenses, etc., especially

where part of these taxes bears interest at the rate of 12 per cent per annum, it seems to the court time to get a new manager. He makes no explanation as to the non-payment of these things, except to say that he did not have the funds. He makes no promise, nor does he hold out any hope that matters will be better in the future. While he rents the buildings heated, he admits that coal, which he purchased for that purpose, has not been paid for. He admits that the hardware which he purchased, presumably for repairs, has not been paid for. There is no doubt whatever of his mismanagement of the estate. He seeks to hold the petitioners responsible for the unpaid bills, because they would not sign a note, by which he could borrow money. It was not their business to raise the money. Instead of acknowledging the rights of the petitioners to assert their position and complain of his management, he shows a defiant attitude. He shows that there is no harmony between the devisees and legatees and the executor. It will not take many years, with such management as his, to render a solvent estate insolvent.

It is provided by the 53d section, clause A, of the Fiduciaries Act, that the orphans' court having jurisdiction of the accounts of executors shall have power to remove such executor, "when such fiduciary is wasting or mismanaging the estate in his charge," or "where for any reason the interests of the estate or property are likely to be jeopardized by the continuance of said fiduciary."

The executor who pays out the moneys of an estate for purposes not authorized by law is wasting and mismanaging the estate as much as one who converts the money of the estate to his own use. It is the bounden duty of the court to hold a fiduciary to a strict account of his management. As we have before said, the answer of the executor admits all of the material allegations. Instead of denying, the executor attempts to explain. His explanations are very unsatisfactory. He, as we have before said, asks that an examiner be appointed to take the testi-

mony. The facts being admitted, no testimony is necessary and the appointment of an examiner would only tend to greater delay and give an opportunity for further mismanagement. We have no doubt as to our duty in the premises.

The court made a decree removing the executor from his trust. The executor appealed.

*Errors assigned* were the decree of the court removing appellant from his trust as executor and refusal of the court to appoint an examiner to take testimony.

*Garnet Gehr,* with him *John W. Hoke,* for appellant. —The burden not only of alleging but of proving mismanagement and misapplication, was upon the petitioners, and this burden had to be borne by the taking of testimony: Souder's App., 169 Pa. 249; Shilling's App., 1 Pa. 90.

The wasting or mismanaging by an executor must clearly appear before he can be removed: Simpson's Est., 34 Pa. Superior Ct. 115; Parson's Est., 82 Pa. 465.

Every presumption is in favor of the honest exercise by the executor of his powers: Chew's Executors v. Chew, 28 Pa. 17; Williams's App., 73 Pa. 249; Bailey's Est., 208 Pa. 594.

*Charles Walter,* of *Walter & Gillan,* with him *Watson R. Davison,* for appellee.—There was no abuse of discretion in removing the executor: Stambaugh's Est., 246 Pa. 555; Bell's Est. (No. 1), 44 Pa. Superior Ct. 60.

PER CURIAM, April 14, 1919.

This appeal is from an order of the court below removing the appellant as executor of the will of his mother, Annie E. Miller. The order was made on the petition for his removal and his answer thereto, and his main complaint is of the refusal of the court to appoint an examiner to take testimony. As the material averments in the petition for the removal were admitted in appellant's

answer, there was no necessity to take testimony. In addition to this he admitted that he had misappropriated a portion of the rentals, now made assets for the payment of the debts of a decedent. In view of those admissions we have not been convinced that the court abused its discretion in removing the appellant, and this appeal is, therefore, dismissed at his costs.